**KEYBANK, f/k/a Society National Bank, Indiana, Appellant–Plaintiff,**

v.

**Candice DAVIS, Appellee–Defendant.**

**No. 20A03–0207–CV–250.**

Court of Appeals of Indiana.

April 3, 2003.

---

Robert J. Palmer, Jeffery A. Johnson, May, Oberfell & Lorber, South Bend, IN, Attorneys for Appellant.

James P. Fenton, Alan Verplanck, Eilbacher Scott, P.C., Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Keybank, f/k/a Society National Bank, Indiana (Keybank) ap-

peals the trial court's decision to grant relief to appellee-defendant Candice Davis. Specifically, Keybank argues that Candice waived any claim of deficient service of process by failing to assert such a defense in her first motion to set aside the default judgment filed pursuant to Indiana Trial Rule 60(B). Concluding that the trial court effectively granted Candice's amended motion to set aside a default judgment and that any error committed by the trial court in entertaining a "second" Trial Rule 60(B) motion was harmless, we affirm.

### FACTS

The facts most favorable to the judgment, which have spawned satellite criminal and civil litigation in our state and federal courts, show that on December 14, 1990, Candice's husband, Paul Davis, together with two business partners, applied for a $2,000,000 loan from Keybank as officers of U.S.A. Diversified Products (Diversified). The loan officer who reviewed Diversified's application had originally wanted Paul, his partners, and Candice to act as guarantors on the loan, but Paul assured the officer that Candice only worked part-time and owned no property individually. Thus, only Paul and his associates were required to guarantee the loan. As company assets, Paul and his partners listed twelve acres of land on Lake Wawasee in Kosciusko County, Indiana, which

they agreed not to subsequently pledge. In reality, Diversified never owned the real estate.

In the meantime, Paul was indicted in August 1991 for mail fraud in the United States District Court for the Northern District of Indiana. On June 26, 1992, Paul pled guilty to those charges. Candice, in the interim, moved to Michigan in June 1992 and filed an action for divorce against Paul.

Upon learning of Paul's plea, Keybank conducted title searches on the real estate supposedly owned by Diversified, which showed that Diversified owned no such property. On November 30, 1992, bank officers went to Diversified's offices and asked for an opportunity to review Diversified's financial records. The request was denied, and on December 8, 1992, Keybank obtained a writ of attachment against Diversified, Paul, and his partners in the Elkhart Superior Court. After having obtained access to Diversified's financial records through court order, Keybank discovered that some of Diversified's funds had been diverted to accounts in the names of Paul and Candice Davis.

Because we are presented with quite the procedural knot to untangle, we set forth the remainder of the facts in chart form and in chronological order for the sake of clarity:

| Date | Event |
| --- | --- |
| March 1, 1993 | Keybank files an action for fraud against Candice in the Elkhart Superior Court. The complaint alleges that Candice possesses certain bank accounts and real estate that were obtained with the funds fraudulently obtained from Keybank by Paul. Keybank sends a summons and complaint addressed to Candice by certified mail to an address in Syracuse, Indiana. However, the envelope later returns undelivered. |
| | Per Keybank's motions, the trial court attaches real estate in Kosciusko County that is under Candice's name. |
| March 1993 | Paul asks attorney Edward Chester to represent his wife, Candice, in the suit brought by Keybank |

| | |
|---|---|
| March 29, 1993 | Chester files an appearance for Candice. |
| May 1993 | Chester asks to meet with his client, Candice, because he is somewhat concerned about Paul's "checkered history." Appellant's App. p. 203. |
| May 1993 | Chester meets with Paul and a woman who identifies herself as Candice Davis. After discussing the case with them for an hour, Chester is satisfied that his client is "the real McCoy." Appellant's App. p. 204. However, Chester has no further communications with either Paul or the woman who identified herself as Candice. |
| June 29, 1993 | Per Keybank's motion, the trial court garnishes three accounts that are in Candice's name: Lake City Bank, $4,157.42; Merrill Lynch, $1,107.38; and NBD Summit Bank, $43,136.70. |
| March 27, 1997 | Chester withdraws his appearance, stating that Candice is "no longer a party in interest," that Chester has "not had contact with her for more than two years," and that "her whereabouts are presently unknown." Appellant's App. p. 91. The trial court grants Chester's motion. |
| September 22, 1997 | Keybank files for default judgment against Candice on grounds that Candice "failed to plead or otherwise comply with the Rules of Procedure." Appellee's App. p. 21. That same day, the trial court enters default judgment against Candice for $2,000,000. |
| March 31, 1998 | Per the trial court's order, a sheriff sale was held wherein the real estate in Kosciusko County that had been attached on March 1, 1993, was sold for $56,400. Appellant's App. p. 191. |
| July 19, 2001 | Attorney Verplanck files his appearance on behalf of Candice and moves to set aside the default judgment entered on September 22, 1997. The motion states that Candice "participated in this litigation" but was not given notice that Keybank had filed for a default judgment. Appellant's App. p. 33 |
| August 2001 | Candice first learns that she "had been represented" by Chester from 1993 to 1997. Appellant's App. p. 143. |
| August 27, 2001 | Hearing on Candice's Trial Rule 60(B) motion, wherein the trial court took the motion under advisement. |
| September 21, 2001 | Candice moves to amend her Trial Rule 60(B) motion on grounds that she omitted certain grounds for relief, namely that she is not a party in interest, she had never hired Chester as her attorney and that she was never personally served with process. Keybank opposes Candice's motion to amend. |
| October 19, 2001 | Trial court denies Candice's original Trial Rule 60(B) motion but does not rule on her motion to amend. |
| October 29, 2001 | Trial court denies the September 21, 2001 motion to amend. |
| November 16, 2001 | Candice files a motion to correct error, arguing that her motion to amend her July 19, 2001 Trial Rule 60(B) motion was erroneously denied. |

December 19, 2001 Candice files a "second" Trial Rule 60(B) motion.

December 20, 2001 Trial court denies Candice's motion to correct error but notes that it would be willing to entertain the "second" motion to set aside the default judgment since new grounds for relief were raised.

January 23, 2002 Candice files her notice of appeal, challenging the denial of her motion to correct error.

February 22, 2002 Trial court holds a hearing on Candice's "second" Trial Rule 60(B) motion, which alleged that Candice had not been served with process. The deposition of attorney Chester is introduced into evidence and published. In his deposition, Chester testified that, to his knowledge, the real Candice Davis never was aware of the allegations against her in this case. Chester concluded that the woman who came to see him in May 1993 was not the Candice Davis involved in the current litigation. Chester testified that Candice was "not quite the type of babe that the woman I met in '93 appeared to be." Appellant's App. p. 199. Chester noted that the real Candice was older and had a different voice and speech pattern.

When asked about the financial accounts and real estate that she had supposedly obtained on account of fraud, Candice indicates that she did not own those accounts. Candice testifies that she did not own real estate in Kosciusko County that was sold at a sheriff's sale.

March 25, 2002 Candice files a motion to stay her appeal.

April 5, 2002 This court stays Candice's appeal pursuant to her request.

June 28, 2002 Trial court grants Candice's "second" Trial Rule 60(B) motion, finding that Candice had raised new issues that were supported by convincing evidence.

Keybank now appeals, asserting that the trial court abused its discretion in vacating its previously entered default judgment.

### DISCUSSION AND DECISION

Keybank argues that Candice waived any argument as to lack of service of process. Specifically, Keybank notes that Candice did not contend that service of process was deficient in her first Trial Rule 60(B) motion. Thus, Keybank alleges that Candice was barred from arguing that service was lacking in a second motion to set aside a default judgment and that no relief should have been granted.

 We first note that a motion made under Indiana Trial Rule 60(B) to vacate a default judgment is addressed to the "equitable discretion" of the trial court. *Ind. Ins. Co. v. Ins. Co. of N. Am.*, 734 N.E.2d 276, 278 (Ind.Ct.App.2000). We review the grant of such a motion only for an abuse of discretion. *Goldsmith v. Jones*, 761 N.E.2d 471, 473 (Ind.Ct.App.2002). An abuse of discretion exists when "the trial court's decision is against the logic and effect of the facts and circumstances before it." *Lee v. Friedman*, 637 N.E.2d 1318, 1320 (Ind.Ct.App.1994).

 We also note that when a defendant disclaims all interests in the property that is the subject of the litigation, no controversy exists for a court to settle. In essence, the plaintiff has won and cannot

ask for more. *King v. Twin City State Bank,* 139 Ind.App. 317, 319, 216 N.E.2d 853, 854 (1966) (holding that when defendant disclaimed any interest in the property subject to litigation, the bank had sole right to the property).

Here, Keybank alleged in its complaint that bank accounts and real estate were procured through fraud. Appellee's App. p. 16. Keybank asked for relief "in an amount necessary to compensate it for the losses it has suffered" from Candice's and Paul's alleged fraud. Appellee's App. p. 16. However, during Candice's testimony at the hearing on the "second" Trial Rule 60(B) motion, when Candice was presented with documentation of a joint checking account with Lake City Bank, Candice stated, "I don't know what this is." Appellant's App. p. 146. When asked whether she had a bank account with Merrill Lynch, Candice responded, "Not that I know of." Appellant's App. p. 146. When Keybank asked Candice if she had a $43,000 certificate of deposit with Summit Bank, Candice replied, "No. No, I don't." Appellant's App. p. 147. Finally, Candice was asked if she ever owned "two parcels of real estate in Kosciusko County," to which Candice answered, "No. No I did not." Appellant's App. p. 151. In sum, Candice denied any rights to the property sought to be attached by Keybank and effectively disclaimed any interest she may have had in that property. After Candice disclaimed any rights to the property Keybank sought to attach, no further controversy remained.

To be sure, the trial court should not have entertained a "second" Trial Rule 60(B) motion for the reason that allowing a party to file repetitive Trial Rule 60(B) motions will "encourage defaulted defendants to drag their feet and be dilatory in discovering grounds for setting aside a default judgment." *Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332, 338 (Ind. 1983). Notwithstanding the trial court's actions, however, we find that the error the trial court committed in hearing the "second" Trial Rule 60(B) motion was harmless because had we heard Candice's appeal of her motion to correct error—which alleged that the trial court abused its discretion in denying her motion to amend—we would have reversed the trial court. It is apparent that the trial court abused its discretion in *denying* Candice's motion to amend her Trial Rule 60(B) motion inasmuch as the motion to amend presented *uncontroverted evidence* that Candice was no longer a party in interest to the litigation. Appellant's App. p. 115. Thus, the trial court's decision on Candice's motion to amend was "against the logic and effect of the facts before it" because it had evidence that the litigation had come to a close. *Friedman,* 637 N.E.2d at 1320.

In short, because the trial court heard the *very same* evidence Candice sought to present in her September 21, 2001 motion to amend—which was erroneously denied—any error in hearing the so-called "second" Trial Rule 60(B) motion was harmless. Thus, we affirm the trial court's ruling.

Affirmed.

RILEY, J., and MATHIAS, J., concur.